UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                          CRIMINAL ACTION

VERSUS                                                                         13-139-SDD-EWD

AHAOMA BONIFACE OHIA

### RULING

This matter is before the Court on the Defendant's *Motion to Vacate Under 28 U.S.C. 2255*.[1] The Government has filed an *Opposition*[2] to this motion, to which the Defendant filed a *Reply*.[3] For the reasons which follow, the motion shall be denied.

**I.    BACKGROUND FACTS**

On October 9, 2013, Defendant was charged by *Indictment*[4] with seven counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2. The *Indictment* charged that Defendant had submitted numerous fraudulent claims to Medicare over approximately a two-year period, seeking nearly two million dollars for medical equipment not prescribed to the beneficiaries and never provided by the Defendant.[5]

Following several counsel changes and after having sought several continuances, the Defendant went to trial in June of 2014, and he was convicted on all seven counts.[6] The Defendant's *Pre-Sentence Investigation Report* ("PSR") was submitted by Probation

---

[1] Rec. Doc. No. 145.
[2] Rec. Doc. No. 151.
[3] Rec. Doc. No. 152.
[4] Rec. Doc. No. 1.
[5] Rec. Doc. No. 1.
[6] Rec. Doc. No. 76.

35919

in August of 2014, and Defendant's counsel filed several objections which were addressed by Probation and the Government. Defendant appeared for sentencing on December 1, 2014, and the Court heard oral argument and received additional evidence concerning the Defendant's objections. Following the Court's ruling on the objections, the Court determined that the Defendant's Offense Level was 34 with a Criminal History Category of I, which resulted in a guideline range of imprisonment of 151 to 188 months.[7]

The Defendant was sentenced to 120 months on Count One and 36 months on each of Counts Two through Seven, with the terms on Counts Two through Seven to run concurrently with each other, but consecutive to the sentence for Count One.[8] This resulted in a total prison term of 156 months. The Defendant was also sentenced to a two-year term of supervised release, ordered to pay a $700 special assessment, and ordered to pay $1,239,283.58 in restitution.[9]

The Defendant timely appealed on December 2, 2014, specifically appealing his convictions on Counts Two, Three, and Four, and challenging the Court's determination of the loss amount which factored into Defendant's guideline range. On October 6, 2015, the Fifth Circuit affirmed the Court's Judgment.[10]

Defendant subsequently filed this motion to vacate his sentence pursuant to 28 U.S.C. § 2255, asserting a variety of errors. The Government opposes the motion.

---

[7] Rec. Doc. No. 124.
[8] Rec. Doc. No. 107.
[9] *Id.*
[10] *United States v. Ohia*, 618 Fed. Appx. 225 (5th Cir. 2015).
35919

## II.     CONSTITUTIONAL RIGHT TO COUNSEL

### A.  Pre-Trial

The Defendant maintains that the Court violated his constitutional right to counsel by refusing to allow him, on the "eve" of trial, to substitute retained counsel for the Court-appointed lawyer who had represented him for six (6) months.  A review of the events leading up to Defendant's pre-trial request to substitute counsel is necessary to gain a clear understanding for the Court's denial.

The Government maintains that the Court's denial of the June 2014 motion to enroll new counsel did not deprive the Defendant of effective representation; it merely prevented the Defendant from changing attorneys, for the third time, just days before trial and manipulating yet another continuance.[11]  The Court agrees.  A review of the record in this case reflects that Defendant was initially represented by Dele A. Adebamiji, a Baton Rouge attorney, at the time of the investigation into Defendant's criminal conduct.  Just prior to his *Indictment*, Defendant terminated the services of Adebamiji and retained Letitia D. Quinones, a lawyer in Houston, Texas, where Defendant was residing at the time.  Just weeks after the *Indictment* was returned, the Government received correspondence that Defendant's relationship with Quinones had "abruptly ended."[12]

Defendant appeared for his initial appearance on October 24, 2013 where he advised the Court that he was financially unable to retain counsel.  Although Defendant's financial status was at issue and argued, the Court ultimately determined that he qualified for appointed counsel and entered an *Order*[13] appointing the Federal Public Defender.

---

[11] Rec. Doc. No. 151, p. 4.
[12] Rec. Doc. No. 63, p. 2.
[13] Rec. Doc. No. 4.
35919

From November through mid-December of 2013, the Defendant was represented by Assistant Federal Public Defender Richard M. Upton. After discovery completion and meetings with the Government, Mr. Upton learned of a conflict with his representation of Defendant and moved to withdraw. CJA Panel attorney Joseph K. Scott, III was substituted as counsel for Defendant.[14] Scott reviewed the discovery materials and filed a motion to continue the scheduled January 2014 trial date, which the Court granted.[15] Trial was re-set for June 9, 2014, and the Parties began preparing for trial.[16]

On May 26, 2014, Defendant moved to continue the trial on the grounds that he was taking a class in Houston that he did not want to miss, and he had an upcoming hearing in small claims court in Houston.[17] The Government opposed this motion, highlighting the significant prejudice that this additional and unwarranted delay would cause.[18] On May 27, 2014, the Court denied the motion, finding that the delay would not serve the ends of justice and would cause prejudice to the Government.[19] Following the denial, the Parties proceeded with trial preparation which included, *inter alia*, exchanging discovery materials, filing jury instructions and voir dire, and preparing a summary of the *Indictment*.

On June 5, 2014, the Defendant appeared improperly through attorneys Hillard C. Fazande, II and Earnest L. Jones of New Orleans and filed two new motions seeking to substitute counsel and, again, continue the trial. The motion to substitute indicated that

---

[14] Rec. Doc. No. 27.
[15] Rec. Doc. No. 30.
[16] Rec. Doc. No. 35.
[17] Rec. Doc. No. 45.
[18] Rec. Doc. No. 46.
[19] Rec. Doc. No. 50.
35919

Defendant no longer wished to proceed with Joseph Scott as counsel and that changing counsel precipitated a need to continue the trial. As the Government pointed out, these lawyers would have been Defendant's fifth and sixth attorneys in the previous year. The Court conducted a hearing, found that these motions were yet another delay tactic, and denied the motions.[20]

The law is well-settled that, "[a]lthough a defendant has a constitutional right to counsel of his choice, that right is not absolute. The denial of a last-minute request for a continuance in order to retain new counsel is within the trial court's discretion."[21] Indeed, the Fifth Circuit has repeatedly held that a criminal defendant "does not enjoy a constitutional right to the counsel of his choice."[22] The Supreme Court has spoken to the limitations of this right:

> Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice.... We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.[23]

Additionally, in *United States v. Jones*,[24] a case involving similar issues, the Fifth Circuit upheld the district court's denial of a defendant's motion to substitute counsel filed thirteen days prior to the scheduled trial where the district court had balanced the defendant's interests against the motivations behind the motions and the district court's calendar.

---

[20] Rec. Doc. No. 66.
[21] *McCoy v. Cabana*, 794 F.2d 177, 180, citing *United States v. Silva*, 611 F.2d 78, 79 (5th Cir.1980).
[22] *Green v. Johnson*, 160 F.3d 1029, 1045, citing *United States v. Breeland*, 53 F.3d 100, 106 n. 11 (5th Cir.1995).
[23] *United States v. Gonzalez–Lopez*, 548 U.S. 140, 151-52 (2006).
[24] 733 F.3d 574 (5th Cir. 2013).
35919

In particular instances where courts have found that motions to substitute counsel are primarily intended to delay the trial, the Fifth Circuit has held:

> [T]he right to counsel of one's choice is not absolute as is the right to the assistance of counsel. The right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. It is a right and a proper tool of the defendant; it cannot be used merely as a manipulative monkey wrench. A defendant cannot assume that the right to choose counsel affords "the right to obtain a delay at his whim and caprice, or to obtain a reversal because he was unable to frustrate justice." Rather, the proper exercise of the trial court's discretion requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice.[25]

For the above reasons, the Court denies the Defendant's motion on this issue.

### B. Pre-Sentencing

Defendant also complains of the Court's denial of his motion pre-sentencing to enroll two new attorneys "for the limited purpose of seeking pre-sentence release for medical reasons."[26] The Court denied this unusual request for several reasons: (1) the filers of the motion failed to follow the proper procedure to enroll under the Local Rules of Court; (2) the filers erroneously represented to the Court that Defendant's counsel Joseph Scott had no opposition to their appearances for this "limited purpose"; and (3) "limited representation by private counsel is [not] compatible with the Criminal Justice Act in a case where the judiciary has expended considerable resources on appointed counsel."[27] Thus, under the same jurisprudence set forth above, the Defendant was not denied his constitutional right to counsel, and this claim is frivolous.

---

[25] *United States v. Mitchell*, 777 F.2d 248, 256 (5th Cir. 1985)(quoting *Gandy v. State of Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978)).
[26] Rec. Doc. Nos. 90 & 91.
[27] Rec. Doc. No. 95, quoting Rec. Doc. No. 92, p. 2.
35919

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also maintains that he was prejudiced by the ineffective assistance of counsel in a variety of ways.  Particularly, Defendant claims counsel failed to adequately conduct pre-trial investigation and was ineffective in plea bargaining by failing to accept a "4-Year Plea."

To obtain relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."[28] To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness."[29] To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,"[30] and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[31]

A defendant must satisfy both prongs of the *Strickland* test to succeed on an ineffective assistance of counsel claim.[32]  A court is not required to address these prongs in any particular order.[33]  If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed."[34]

---

[28] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).
[29] *Id.* at 688.
[30] *Id.* at 694.
[31] *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983).
[32] *See Strickland*, 466 U.S. at 697.
[33] *Id.*
[34] *Id.*

35919

### A. Failure to Conduct Pre-trial Investigation

Defendant's claim that his counsel failed to conduct pre-trial investigation is meritless. Defendant alleges that his counsel failed to investigate, call witnesses, and research the relevant law. In this case, the Defendant was represented by a skilled criminal defense lawyer who, as a member of the CJA Panel, has represented numerous criminal defendants in federal court. The Defendant offers no specific evidence other than his conclusory subjective beliefs indicating that Scott's performance fell below an objective standard of reasonableness or that the results of the trial would have been different in the absence of these alleged errors.

In the Fifth Circuit, there is a strong presumption that counsel performed adequately and exercised reasonable professional judgment.[35] "[A] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[36] However, there is a distinction between strategic judgment calls and plain omissions.[37] The court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all."[38]

Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than

---

[35] *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir.2006).
[36] *Id.* (internal quotation marks omitted).
[37] *See Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir.1992).
[38] *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir.1999).
35919

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.[39] A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.[40]

Contrary to Defendant's assertions, the Defendant's own motion concedes that his counsel hired a private investigator who contacted the Defendant and his wife to obtain information about the Defendant's employees.[41] Additionally, defense counsel attempted to contact several witnesses identified by the Defendant; it is not counsel's fault if many witnesses refused to provide him any information.[42] Further, at all times he appeared before the Court, personally or in writing, the Court observed defense counsel to be knowledgeable of the issues at hand and in full command of the applicable law and jurisprudence. The record does not support Defendant's specious claims that his counsel failed to properly investigate this case, contact witnesses, or conduct legal research.

### B. Ineffective Plea Bargaining

Defendant also claims that his counsel was ineffective in plea negotiations and failing to accept an alleged 4-year plea agreement offered by the Government. As the Government contends, this argument is frivolous. Prior to the start of trial, the Court engaged in a colloquy with the Defendant where he confirmed on the record that he did not desire to accept the plea agreement that had been offered by the Government.[43] Then, counsel for Defendant advised the Court on the record as follows:

---

[39] *Strickland v. Washington*, 466 U.S. at 690–91.
[40] *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).
[41] Rec. Doc. No. 145, Exhibit B, p. 2; Exhibit C, p. 3.
[42] Rec. Doc. No. 151, Exhibit A, ¶ 9 (May 25, 2016 Letter from J. Scott).
[43] Rec. Doc. No. 121, p. 8.
35919

> I would just represent to the Court that we did receive an offer from the United States; that I reviewed it with Mr. Ohia; that we declined that offer; that in turn Mr. Ohia had me investigate with the United States two or more alternative pleas or arrangements with the United States, which the United States in turn rejected. And that we have done so probably over the past month, month and a half. And so I believe that we have done what we can to try and get this sorted out, short of trial.[44]

These representations made in open Court are presumed to be truthful.[45] Thus, Defendant's current claim that he wished to plead guilty and avoid trial is contradicted by his own statements to the Court on the morning of trial.

Defendant's claims are also contradicted by his counsel's correspondence with the Government detailing the Defendant's consistent denial of guilt and lack of desire to accept the offered plea agreement.[46] According to counsel, Defendant's desired resolution of this matter was only either to pay money to the United States to have the criminal case dismissed or plead guilty if he was guaranteed not to be sentenced to a term of imprisonment.[47] However, what is clear from counsel's letter is that there was no indication by Defendant that he wanted to plead guilty under the terms offered by the Government.[48]

Defendant's reference to an alleged offered "4-year plea deal" is likewise meritless. The Government has advised the Court that it never offered the Defendant any plea agreement that would have "capped" the Defendant's prison sentence at four years. Thus, the description of the plea agreement the Defendant now claims he wished to accept is inaccurate. There being no such offer, the Defendant could not have been

---

[44] *Id.* at p. 9, lines 23-25 through p. 10, lines 1-7.
[45] *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).
[46] Rec. Doc. No. 151-1, ¶¶ 6, 11, 13, 23, & 24.
[47] *Id.* at ¶ 24.
[48] *Id.* at ¶ 25.
35919

prejudiced by counsel's alleged failure to accept a deal that did not exist.  The Government concedes that it did offer Defendant a plea agreement wherein he would plead guilty to one of the seven charged counts; however, in no way did this plea agreement limit the Defendant's potential term of imprisonment.  The record clearly establishes that Defendant's counsel communicated with the Government and Defendant regarding plea possibilities and diligently worked on Defendant's behalf in such endeavors, but the Defendant wished to proceed to trial.

Defendant's reliance on the Supreme Court's decision in *Lafler v. Cooper*[49] is misplaced.  In *Lafler*, the Court held, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence."[50] *Lafler*, along with *Missouri v. Frye*,[51] which was decided on the same day, extended a criminal defendant's Sixth Amendment right to counsel to the plea negotiation stage and set the standards for how to analyze such claims in accordance with *Strickland v. Washington*.

The Defendant has not alleged any facts which could show that the holdings in *Lafler* or *Frye* are applicable in this case.  Here, the Defendant has never admitted his guilt; rather, he maintained his innocence even throughout his sentencing hearing.  Further, there is no evidence that the Defendant demonstrated any intent to plead guilty, which is confirmed by his comments to the Court on the morning of trial.  There is simply

---

[49] 566 U.S. 156, 132 S.Ct. 1376 (2012).
[50] *Id.* at 1387.
[51] 566 U.S. 133, 132 S.Ct. 1399 (2012).
35919

no basis for Defendant's argument that he received ineffective assistance of counsel during the plea bargaining stage of this process.

## IV. THE LOSS AMOUNT

In the current motion, Defendant challenges the Court's finding of the loss amount in this case. Because the factual assertions and argument relating to the loss amount were rejected by this Court and the Fifth Circuit in Defendant's appeal, the Court need not rehash those findings here. The Court will note the Fifth Circuit's *Ruling* that the Defendant's mere objections to the loss amount "did not constitute competent rebuttal evidence" and that the Defendant "failed to establish that the information included in the PSR was 'materially untrue, inaccurate, or unreliable.'"[52] Defendant's request for relief on this issue is denied.[53]

## V. RECENT GUIDELINES CHANGE

Defendant also contends that the recent change to the Sentencing Guidelines' definition of "intended loss" mandates he be re-sentenced. This argument is without merit. The Defendant was sentenced on the basis of loss that "would have been impossible or likely to occur."[54] This definition has been changed to read only loss "the defendant purposely sought to inflict." However, the Defendant fails to explain how this change forms any grounds for re-sentencing. Even if the two definitions resulted in different intended loss figures, which the Defendant has not shown, it remains irrelevant

---

[52] *United States v. Ohia,* 618 Fed. Appx. 225, 226 (5th Cir. 2015).
[53] The Government also correctly notes that Defendant's argument fails to consider the actual loss as a result of his criminal conduct. The Court would have met the $1 million threshold under Section 2B1.1 even if it had considered only the actual loss without considering of the intended loss. Thus, the resulting offense level would have been unchanged.
[54] Rec. Doc. No. 145, p. 23.

35919

as the actual loss far exceeded the $1 million threshold for the Defendant's offense level. The Defendant's motion on this issue is denied.

## VI. APPLICATION OF USSG § 5G1.2

Defendant claims his counsel was ineffective in failing to object to the Court's decision to impose consecutive sentences for some counts of conviction. As the Government notes, the Court correctly applied the Sentencing Guidelines, and any objection by counsel to a consecutive sentence was futile.

The Defendant's counts were grouped under USSG § 3D1.2.[55] The PSR correctly determined that the Defendant's offense level should be based on the total amount of harm or loss caused by Defendant's scheme. The grouping of the counts resulted in an offense level of 36. The Court granted one of Defendant's objections which lowered the offense level to a 34. This resulted in a guideline range of imprisonment of 151-188 months. Under this range, the Sentencing Guidelines did not recommend concurrent sentences. Indeed, the express language under Section 5G1.2(d) states:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts <u>shall run consecutively</u>, but only to the extent necessary to produce a combined sentence equal to the total punishment.[56]

Because the Guidelines recommended a sentence of 151-188 months, Section 5G1.2(d) required a sentence of 120 months on the first count followed by a consecutive sentence of 31-68 months on one or more remaining counts to "produce a combined sentence equal to the total punishment."[57] Accordingly, there was no error by the Court in ordering

---

[55] *See* Rec. Doc. No. 106, ¶ 32.
[56] USSG § 5G1.2(d)(emphasis added).
[57] *Id.*; *See United States v. Galaviz*, 583 Fed. Appx. 476, 477 (5th Cir. 2014).
35919

the sentences on Counts Two through Seven to run concurrently to Count One so that a sentence of 156 months could be achieved.

## VII.   REMAINING CHALLENGES

Defendant raises several other challenges to his sentence, arguing that his offense level should not have been increased based on sentencing enhancements for:  (a) obstruction of justice (USSG § 3C1.1); (b) mass marketing (USSG § 2B1.1(b)(2)); (c) unlawful use of means of identification (USSG § 2B1.1(b)(10)); (d) leadership role (USSG § 3B1.1(a)); and (e) abuse of a position of public trust (USSG § 3B1.3).[58]   In the Fifth Circuit, section 2255 petitioners cannot challenge a district court's technical application of the Sentencing Guidelines on collateral review.[59]   Accordingly, these claims are not appropriately before this Court and should have been part of Defendant's appeal.

Insofar as Defendant attempts to frame these issues as claims of ineffective assistance of counsel in counsel's failure to object to such enhancements, these attempts fail.  First, defense counsel specifically objected to enhancements (a), (b), and (d) prior to and at the sentencing hearing.[60]   The Court considered the arguments and ultimately found that the enhancements applied.  While it is true counsel made no objections to enhancements (c) and (e), any potential objections would have likely been rejected under Fifth Circuit jurisprudence regarding same.[61]

---

[58] *See* Rec. Doc. No. 145, pp. 27-34.
[59] *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir.1999); *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir.1994).
[60] Rec. Doc. No. 105, pp. 6, 8; Rec. Doc. No. 124, pp. 3-6, 30-48.
[61] *See United States v. Miller*, 607 F.3d 144 (5th Cir. 2010)(position of trust)(holding that the defendant's "position and authority as owner of a licensed DME provider involve[d] the type of complex, situation-specific decision-making that is given considerable deference precisely because it cannot be dictated entirely by, or monitored against, established protocol" and further explaining that "by granting [the defendant] a license to provide durable medical equipment, the government entrusted her to provide good faith, accurate information in seeking reimbursement from Medicare and Medicaid"); *United States v.*
35919

Thus, Defendant has failed to demonstrate that counsel's failure to object to these issues fell below the objective standard of reasonableness. Contrary to Defendant's statement, the law does not require an attorney to present "every conceivable issue on appeal."[62] Rather, "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*. Nothing in the Constitution or our interpretation of that document requires such a standard."[63] The record reflects that counsel for the Defendant made reasonable decisions in the focus of his appeal regarding the Defendant's convictions and sentence.

In this regard, Defendant has also failed to demonstrate that he suffered any prejudice from the alleged failures by counsel. Had counsel made the objections the Defendant now desires, the Fifth Circuit would have reviewed the Court's findings for clear error.[64] Considering this high standard, Defendant has not carried his burden of presenting credible argument or evidence that his counsel would have been successful. Indeed, most of Defendant's allegations on this issue have been rejected by the jury and this Court. Accordingly, the Defendant's motion is denied as to any sentencing-related arguments.

---

*Mahmood*, 820 F.3d 177 (5th Cir. 2016)(means of identification)(discussing the scope of 18 U.S.C. § 1028A and assuming, without discussion, that a medical patient's identification information would qualify as a "means of identification").
[62] Rec. Doc. No. 145, p. 30.
[63] *Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).
[64] *See e.g., United States v. Juarez-Duarte*, 513 F.3d 204, 209 (5th Cir. 2008); *United States v. Usman*, 460 Fed. Appx. 414, 417 (5th Cir. 2012); *United States v. Ocana*, 204 F.3d 585, 592 (5th Cir. 2000).
35919

## VIII.   CONCLUSION

For the reasons set forth above, the Defendant's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence*[65] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 22, 2017</u>.

	*[signature]*
	**JUDGE SHELLY D. DICK**
	**UNITED STATES DISTRICT COURT**
	**MIDDLE DISTRICT OF LOUISIANA**

---

[65] Rec. Doc. No. 145.

35919